Frank J. Dykas (ISB #1777)
*Email:  frank@dykaslaw.com*
Elizabeth H. Schierman (ISB #7208)
*Email:  schierman@dykaslaw.com*
DYKAS, SHAVER & NIPPER, LLP
P.O. Box 877
Boise, Idaho 83701-0877
Telephone:  (208) 345-1122
Facsimile:   (888) 388-6035

Edward W. Goldstein (Texas Bar No. 08099500)
*Email:  egoldstein@gfpiplaw.com*
Matthew Prebeg (Texas Bar No. 00791465)
*Email:  mprebeg@gfpiplaw.com*
Stephen W. Abbott (Texas Bar No. 00795933)
*Email:  sabbott@gfpiplaw.com*
Wendy L. Boone (Texas Bar No. 24047310)
*Email:  wboone@gfpiplaw.com*
GOLDSTEIN, FAUCETT & PREBEG L.L.P.
1177 West Loop South, Suite 400
Houston, Texas 77027
Telephone:  (713) 877-1515
Facsimile:   (713) 877-1737

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| 55 BRAKE, L.L.C., | ) | **55 BRAKE, L.L.C.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUDI OF AMERICA, INC., *et al.*, | ) | Case No. CV 1:08-cv-00177-BLW |
| | ) | |
| Defendants. | ) | |

<u>TABLE OF CONTENTS</u>

I.   INTRODUCTION AND SUMMARY OF ARGUMENT --------------------------------------- 1

II.  FACTUAL BACKGROUND ------------------------------------------------------------------------- 1

   A. The Parties. ---------------------------------------------------------------------------------------- 1

   B. The Patent-in-Suit and an Overview of the Technology at Issue ---------------------------- 2

   C. Litigation and Procedural History ------------------------------------------------------------- 3

III. VGA'S ALLEGED BASES FOR INEQUITABLE CONDUCT ---------------------------- 5

IV.  ARGUMENT AND AUTHORITIES ----------------------------------------------------------- 5

   A. The Summary Judgment Standard --------------------------------------------------------------- 5

   B. The Law of Inequitable Conduct --------------------------------------------------------------- 6
      a. Standards for inequitable conduct. ----------------------------------------------------------- 6
         i. Intent to deceive. --------------------------------------------------------------------------- 7
         ii. Materiality. -------------------------------------------------------------------------------- 8
         iii. *Therasense, Inc. v. Becton, Dickinson & Co.* ------------------------------------------ 8
         iv. Reinstatement of an expired patent. ----------------------------------------------------11
         v. Reasonable inquiry into the facts and circumstances underlying the delayed payment
         of maintenance fees when seeking to reinstate a lapsed patent. --------------------------12

   C. There was No Inequitable Conduct because There Was No Intent to Deceive the PTO
      and Because No Material Information Was Withheld from the PTO. ----------------------12
      a. 55 Brake's failure to pay the required maintenance fee of the '587 patent was
      unintentional. ------------------------------------------------------------------------------------13
      b. Attorney Epstein made a reasonable inquiry into the facts and circumstances
      underlying the delayed payment of the maintenance fee when seeking to reinstate the
      '587 patent.---------------------------------------------------------------------------------------15
      c. Attorney Pedersen did not breach her duty of candor and good faith in dealing with the
      PTO.-----------------------------------------------------------------------------------------------17
      d. The Dietchman patent.-----------------------------------------------------------------------18
      e. The Semmler patent application. ------------------------------------------------------------19

V.   CONCLUSION---------------------------------------------------------------------------------------20

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
 544 F.3d 1341 (2008)......................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 106 S. Ct. 2505 (1986) ............................................................. 6

*Astrazeneca Pharm., LP v. Teva Pharm. USA, Inc.*,
 2009 U.S. App. LEXIS 21165 (Fed. Cir. Sept. 25, 2009) ........................... 6, 7, 8, 15

*ATD Corp. v. Lydall, Inc.*,
 159 F.3d 534 (Fed. Cir. 1998)........................................................................... 6

*Cargill, Inc. v. Canbra Foods, Ltd.*,
 476 F.3d 1359 (Fed. Cir. 2007)......................................................................... 7

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 106 S. Ct. 2548 (1986) ............................................................. 6

*Digital Control, Inc. v. Charles Mach. Works*,
437 F.3d 1309 (Fed. Cir. 2006).......................................................................... 10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009)......................................................................... 7

*Exigent Tech. v. Atrana Solutions, Inc.*,
 442 F.3d 1301 (Fed. Cir. 2006)......................................................................... 6

*Femspec, L.L.C. v. Dudas*,
 2007 U.S. Dist. LEXIS 8482 (N.D. Cal. Jan. 26, 2007) ............................... 11

*Goss Int'l Ams., Inc. v. MAN Roland, Inc.*,
 2006 U.S. Dist. LEXIS 53245 (D.N.H. July 31, 2006) ................................. 12

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
322 U.S. 238 (1944)............................................................................................ 10

*Impax Labs., Inc. v. Aventis Pharms. Inc.*,
 468 F.3d 1366 (Fed. Cir. 2006)......................................................................... 7

*In re Application of Maldague*,
 Serial No. 725,592, 1988 Commr. Pat. LEXIS 22 (Comm'r Pat. & Trademarks June 10, 1988)
 ................................................................................................................................ 12

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
  946 F.2d 821 (Fed. Cir. 1991).................................................................. 7

*Keystone Driller Co. v. General Excavator Co.*,
  290 U.S. 240 (1933)..................................................................................... 10

*Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*,
  863 F.2d 867 (Fed. Cir. 1988)............................................................... 8, 15

*Life Technologies, Inc. v. Clontech Labs., Inc.*,
  224 F.3d 1320 (Fed. Cir. 2000).................................................................. 7

*Norton v. Curtiss*, 433 F.2d 779,
  792-93 (C.C.P.A. 1971) ............................................................................. 11

*Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*,
  324 U.S. 806 (1945)..................................................................................... 10

*Regents of Univ. of Cal. v. Eli Lilly Co.*,
  119 F.3d 1559 (Fed. Cir. 1997)……………………………………………8

*Scripps Clinic & Research Found. v. Genetech, Inc.*,
  927 F.2d 1565 (Fed. Cir. 1991)) ............................................................... 8

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
  537 F.3d 1357 (Fed. Cir. 2008)............................................................... 7, 8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  565 F. Supp. 2d 1088 (N.D. Cal. 2008) .................................................... 8

*Unigene Labs., Inc. v. Apotex, Inc.*,
  2009 U.S. Dist. LEXIS 78051 (S.D.N.Y. 2009)........................................ 7

**Statutes**
35 U.S.C. § 41(b) ............................................................................................ 11
35 U.S.C. § 41(c)(1)........................................................................................ 11
37 C.F.R. § 1.378 ............................................................................................ 11
37 C.F.R. § 1.56(a).......................................................................................... 8


**Treatises**
4 DONALD S. CHISUM, CHISUM ON PATENTS § 11.02(1)(d)(iv)(C) ............................. 12

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff 55 Brake, L.L.C. ("55 Brake") respectfully moves this Court for summary judgment as to defendant Volkswagen Group of America, Inc.'s ("VGA's") counterclaim and affirmative defense alleging the unenforceability of United States Patent No. 6,450,587 ("the '587 patent") based upon inequitable conduct.  VGA has identified no evidence and can come forward with no direct evidence whatsoever – much less clear and convincing evidence – of any intent by 55 Brake to deceive the United States Patent and Trademark Office ("PTO") during the either the prosecution of the '587 patent (as all material prior was submitted to the PTO in accordance with the applicable patent rules), to intentionally delay payment of the maintenance fee for the '587 patent, or its subsequent reinstatement of the '587 patent.  On the contrary, the only evidence adduced to date is that 55 Brake had no intent to deceive the PTO in these regards, and 55 Brake's attorneys adhered to their duty of candor and good faith to the PTO in all respects.

Accordingly, because there are no questions of material fact and because VGA can come forward with no evidence to sustain its burden of proving inequitable conduct by clear and convincing evidence, 55 Brake respectfully requests that the Court grant its motion for summary judgment and a enter judgment dismissing VGA's counterclaim and defense of unenforceability for inequitable conduct.

## II.  FACTUAL BACKGROUND

### A.  The Parties.

55 Brake is the owner of all rights, title and interest in and to three (3) United States patents, including the '587 patent, as well as several foreign counterpart patents.  While 55 Brake (and its predecessor in interest) once attempted to enter into the business of manufacturing

certain automobile brake control systems, business conditions unfortunately precluded 55 Brake from developing its original and then anticipated business purpose. Consequently, 55 Brake took its only remaining asset – its patent portfolio – and began its efforts to license these patents as its main and only source of revenue.

VGA holds itself out as the American arm of the third largest automaker in the world, the Volkswagen Group. VGA also lays claim to having more than 2,500 employees in the United States with operations including the development, manufacture and sales of the Audi, Bentley, Bugatti, Lamborghini and Volkswagen auto brands.

### B.  The Patent-in-Suit and an Overview of the Technology at Issue

The '587 patent is directed generally toward an automatic brake control system that detects potentially unsafe conditions, as sensed by a plurality of sensors, and then enhances safety by automatically applying or maintaining the brake. The patented system was invented by local Idaho natives, G. David MacGregor, Noble Hamilton, and Dale Maslonka. The '587 patent was later assigned to 55 Brake. *See* Ex. 1, the '587 patent. The patented control system includes a management mechanism, a controller and sensors.

The management mechanism applies the brakes while the controller acts as the "brain" of the system. The controller is equipped with the logic to decide when the brakes should be applied. It also operates the management system to apply the brakes. Sensors link the controller to various locations inside, outside, or around the vehicle. In other words, the various sensors and switches sense conditions in or around the vehicle that are potentially unsafe if the vehicle were to move and automatically signal the controller, which decides whether or not to trip the management mechanism to apply the brakes.

The '587 patent describes many unsafe conditions such as a driver exiting the vehicle without applying the parking brake or without turning off the vehicle, a wheelchair lift being extended, seat belts being disengaged, low tire pressure, and an ajar delivery vehicle door.  *See* Ex. 1, the '587 patent, col. 2, ll. 37-63.  These conditions are detected by the sensors, and the controller then decides whether or not to trip the management mechanism to apply the brakes.  This invention allows a driver to focus more on safe driving and vehicle operation rather than on repeated manual operation of the parking brake and repeated checking of the parking brake position.  It may be used with a variety of existing brake systems by adapting the management mechanism for the particular type of brake system being used.

### C.  Litigation and Procedural History

On April 21, 2008, 55 Brake sued VGA and a number of other entities alleging infringement of at least claims 7-11, 13-17, 26, 27, 29, 33, 34, 40, and 41 of the '587 patent.  *See* First Amended Complaint, Doc. No. 10 at 7.  More specifically, 55 Brake alleged that the defendants, including VGA, infringe the '587 patent by making or using electric parking brakes and electric braking systems of a certain design, and by selling products having electric parking brakes of this design.  *Id*.

The Court held a claim construction hearing on June 25, 2009 in order to construe certain terms and phrases found in the '587 patent.  The Court issued its claim construction order on July 8, 2009.  *See* Memorandum Decision and Order on Claim Construction, Doc. No. 91.

On June 19, 2009, VGA filed a motion for summary judgment of invalidity of the '587 patent.  After briefing and argument, the Court denied VGA's motion.  *See* VGA's Motion for Summary Judgment of Invalidity, Doc. No. 85.

Fact discovery closed in this matter on June 1, 2010.  *See* Docket Control Order, Doc. No. 111 at 2.  Prior to the close of fact discovery, 55 Brake deposed the corporate representative of VGA.  VGA has taken no less than eleven depositions from California to Michigan, concentrating mostly, and in some instances exclusively on their inequitable conduct claim, including the Rule 30(b)(6) deposition of 55 Brake, managing members of 55 Brake (Mr. David MacGregor, Mr. Gary Babbitt, Mr. Jeff Fletcher, Mr. Joe Holmes), the two inventors of the '587 patent (Mr. Noble Hamilton and Mr. MacGregor), two attorneys associated with the prosecution of the '587 patent (Mr. Ken J. Pedersen and Ms. Barbara S. Pedersen), an attorney overseeing the payment of maintenance fees and foreign annuities (Mr. Joseph Coppola), the attorney responsible for filing the petition to reinstate the patent (Mr. Robert H. Epstein) and a staff member of this same attorney (Ms. Lee Paige Rhodes), and Mr. Sven Evers, an individual contracted to do a product design and review several pieces of prior art for 55 Brake, including the Semmler patent application.

Neither party has exchanged expert reports, including expert reports with respect to the issue of inequitable conduct.

At the conclusion of fact discovery, the parties jointly moved for a stay and a limited trial on the inequitable conduct issue.  The Court granted in part and denied in part the parties' stipulated motion requesting a bench trial on inequitable conduct and stay of other proceedings. In its Order, this Court left the existing schedule intact with respect to the deadlines for filing summary judgment motions.  *See* Doc. No. 158 at 4.  A trial on the inequitable conduct issue is set for March 21, 2011, with the remaining schedule, including the trial date, to be scheduled soon thereafter.

As the undisputed facts and the arguments and authorities point out, the instant motion renders the need for a trial on the inequitable conduct issue a nullity.

## III. VGA'S ALLEGED BASES FOR INEQUITABLE CONDUCT

VGA has alleged in its Amended Answer and Counterclaim (Doc. No. 121) that the '587 is unenforceable for 55 Brake's alleged inequitable conduct.  *See* Ex. 2, VGA's Amended Answer and Counterclaim ("Amended Answer") at 14-26.   VGA's Amended Answer summarizes these allegations of inequitable conduct in ¶ 60 (i-ii):

> As described in further detail below, the '587 patent is unenforceable for inequitable conduct because:
>
> (i) after the '587 patent had expired on September 18, 2006 due to an intentional failure to pay the required maintenance fee, 55 Brake, through its attorney Robert H. Epstein, filed a "Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent" with the Patent and Trademark Office on August 14, 2007, making the false or uninvestigated statement that "[t]he delay in payment of the maintenance fee to this patent was unintentional," which led to the reinstatement of the '587 patent; and
>
> (ii) during prosecution of the application leading to the issuance of the '587 patent, at least the inventors, G. David MacGregor, Noble Hamilton, and Dale Maslonka, or their attorneys or agents who prepared or prosecuted the application, Ken J. Pedersen and Barbara S. Pedersen, breached their duty of candor and good faith in dealing with the Patent and Trademark Office, and misled the Patent and Trademark Office, by failing to disclose to the Patent and Trademark Office all information known to those individuals to be material to patentability of the claims of the patents, for example the information related to the Deitchman patent and the Semmler patent application, as described below.

*See* Ex. 2, VGA's Amended Answer.

As the following paragraphs point out, VGA's inequitable conduct defense fails as a matter of law.

## IV. ARGUMENT AND AUTHORITIES

### A.  The Summary Judgment Standard

Summary judgment is properly granted where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).  A movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986).  A motion for summary judgment of no inequitable conduct "'may be granted when, drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant can not prevail.'"  *Astrazeneca Pharmaceuticals LP v. Teva Pharmaceuticals USA, Inc*., 2009 U.S. App. LEXIS 21165, at *4 (Fed. Cir. Sept. 25, 2009) (quoting *ATD Corp. v. Lydall, Inc*., 159 F.3d 534, 547 (Fed. Cir. 1998)).  In other words, "the burden on the moving party may be discharged by 'showing' – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Exigent Tech. v. Atrana Solutions, Inc*., 442 F.3d 1301, 1308 (Fed. Cir. 2006) (internal citations omitted).

### B.  The Law of Inequitable Conduct

#### a.  Standards for inequitable conduct.

To render a patent unenforceable, the proponent of the inequitable conduct defense must establish by clear and convincing evidence that "the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office

("PTO")." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364-65 (Fed. Cir. 2007) (citing *Impax Labs., Inc. v. Aventis Pharms. Inc*., 468 F.3d 1366, 1374 (Fed. Cir. 2006)).

"Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence." *Life Technologies, Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1324 (Fed. Cir. 2000). "This burden is significant because clear and convincing evidence 'proves in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions [is] highly probable." *Unigene Labs., Inc. v. Apotex, Inc.*, 2009 U.S. Dist. LEXIS 78051, at * 11 (S.D.N.Y. 2009) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991). Those asserting inequitable conduct must identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1331 (Fed. Cir. 2009).

### i.  Intent to deceive.

"Intent to deceive is an independent element of inequitable conduct, and must be independently established by clear and convincing evidence." *Astrazeneca Pharm., LP*, 2009 U.S. App. LEXIS 21165, at *20 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 537 F.3d 1357, 1365 (Fed. Cir. 2008) (citations omitted). To establish intent under the clear and convincing evidence standard, the party asserting inequitable conduct "must show that the applicant made a deliberate decision to withhold a known material reference." *Exergen Corp.*, 575 F.3d at 1331 (internal citations omitted). In other words, "[i]ntent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Abbott Labs. v. Sandoz, Inc*., 544 F.3d 1341, 1355 (2008) (internal citations omitted).

Although intent to deceive may be inferred from indirect and circumstantial evidence, "such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Star Scientific, Inc.*, 537 F.3d at 1366 (citations omitted). Rather, "the inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Id.* (citations omitted) (emphasis added). Further, "[e]vidence of mistake or negligence, even gross negligence, is not sufficient to support inequitable conduct in patent prosecution." *Astrazeneca Pharm., LP*, 2009 U.S. App. LEXIS 21165, at *20-21 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc*., 863 F.2d 867, 876 (Fed. Cir. 1988).

### ii.   Materiality.

Information is material "where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." 37 C.F.R. § 1.56(a). Information is not material, however, where it "is 'simply cumulative to other references,' *i.e.*, if the reference teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO." *Regents of Univ. of Cal. v. Eli Lilly Co*., 119 F.3d 1559, 1574-75 (Fed. Cir. 1997) (citing *Scripps Clinic & Research Found. v. Genetech, Inc*., 927 F.2d 1565, 1582 (Fed. Cir. 1991).

### iii.   *Therasense, Inc. v. Becton, Dickinson & Co.*

Currently on appeal before the Federal Circuit is an appeal from a final judgment of the United States District Court for the Northern District of California in the lawsuit styled: *Therasense, Inc. v. Becton, Dickinson & Co.*, 565 F. Supp. 2d 1088 (N.D. Cal. 2008). Following a bench trial, the district court determined that claims 1–4 of U.S. Patent No. 5,820,551 ("the

'551 patent") were invalid due to obviousness and that the entire '551 patent was unenforceable due to inequitable conduct. An Original Panel of the Federal Circuit rendered a decision on January 25, 2010 affirming that the district court did not abuse its discretion in holding the '551 patent unenforceable due to inequitable conduct.

The Plaintiffs-Appellants, TheraSense (now Abbott Diabetes Care, Inc.) and Abbott Laboratories, filed a petition for rehearing *en banc*; it was granted on April 26, 2010. (TheraSense filed its opening brief on July 26, 2010. Becton Dickinson & Bayer's opposing brief is due October 8, 2010. Oral arguments are scheduled for November 9, 2010.)

The district court and the Federal Circuit in its Original Panel decision held the '551 patent unenforceable for inequitable conduct based on a failure to disclose statements made to the European Patent Office ("EPO") during a revocation proceeding of the European counterpart to the '382 patent.

The '551 patent was in prosecution for over fourteen years. During this period, Genetics International changed its name to Medisense, Inc. In 1996—while the '551 patent was still pending before the PTO—Medisense was purchased by Abbott Laboratories. When Abbott acquired the pending application that led to the '551 patent, its in-house lawyer, Lawrence Pope, took over the prosecution. Dr. Sanghera was the director of research and development in the United States for Medisense (later sold to Abbott). His duties included supervising Abbott's patent portfolio. Dr. Sanghera and Attorney Pope were major players in the prosecution of the '551 patent.

The district court found that statements made by Abbott's predecessor to the EPO were highly material to the prosecution of the '551 patent because they contradicted representations Abbott made to the PTO regarding the membraneless sensor disclosed in the '382 patent, prior

art.  The submissions made to the EPO were inconsistent with the submissions made to the PTO in at least two important ways.

Dr. Sanghera had been much involved in the EPO appeal. He helped develop the arguments and had even attended the oral argument before the EPO on June 20, 1995. He was completely familiar with the points made in the EPO appeal by Medisense.  Dr. Sanghera disclosed all of the EPO submissions to Attorney Pope, who read and understood them.

Both, Pope and Dr. Sanghera, decided to withhold the EPO materials from the PTO. Both knew that Dr. Sanghera's declaration would be submitted to the PTO without disclosing the EPO submissions to the contrary. Both knew that the EPO materials made affirmative statements inconsistent with the declaration and the attorney remarks concerning the '382 sentence in question.

In its opening brief on rehearing en banc, Abbott's main argument stems from the "inequitable conduct" doctrine originating from three Supreme Court decisions—*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); and *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806 (1945).  In those foundational cases, the Supreme Court "refused to enforce [the] patents" at issue because "the patentees had engaged in fraud in order to procure those patents." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1315 (Fed. Cir. 2006).  Abbott continues to argue that those cases did not involve missteps in making the legally and factually complex decisions applicants regularly make (such as whether to submit marginal prior art or potentially cumulative material).  Nor were they "mere" cases of fraud.  They were extreme cases of blatant misconduct involving perjury, fabricated evidence,

and bribery—"conduct so reprehensible" that it warranted the "severe penalt[y]" of unenforceability. *Norton v. Curtiss*, 433 F.2d 779, 792-93 (C.C.P.A. 1971).[1]

### iv.   Reinstatement of an expired patent.

When a patent expires for failure to pay maintenance fees per 35 U.S.C. § 41(b) the patent owner may reinstate the patent *via* the procedures in 35 U.S.C. § 41(c)(1).  35 U.S.C. § 41(b)–(c) (2006).  The relevant regulation derived from 35 U.S.C. § 41 is 37 C.F.R. § 1.378 which governs the reinstatement of a patent after expiration.  37 C.F.R. § 1.378 (2009).  The regulation requires that "any petition to accept an unintentionally delayed payment of a maintenance fee . . . must include . . . [a] statement that the delay in payment of the maintenance fee was unintentional."  37 C.F.R. § 1.378(c).

Case law for the "unintentional" standard directly on point with the issue presented is sparse.  "Unintentional" is seen as being something less than "unavoidable."  *See Femspec, L.L.C. v. Dudas*, No. C-06-2719 JCS, 2007 U.S. Dist. LEXIS 8482, at *25–27 (N.D. Cal. Jan. 26, 2007) (finding the patent owner's delay avoidable but noting that the patent owner's complete ignorance of a maintenance fee "was understandable under the circumstances and [] his failure to pay the required maintenance fee was unintentional.").

For purposes of this motion, 55 Brake presumes that the same "unintentional" standard used in the context of abandoned patent applications would also apply to patent expiration for failure to timely pay maintenance fees.  *See* 4 DONALD S. CHISUM, CHISUM ON PATENTS §

---

[1] *Therasense* is wholly inapplicable to the instant action, regardless of the legal issues to be addressed on appeal. The facts of *Therasense* are easily distinguished from the facts of the instant case.  Put simply, the facts in *Therasense* were egregious acts of knowingly withholding material prior art from a foreign prosecution with full knowledge that declarations submitted to the PTO were contradictory.  The facts of the instant case clearly establish that the references identified by the EPO were submitted to the PTO during the prosecution of the '587 patent.  Moreover, there were no arguments leveled during the prosecution regarding these references, thus there are no contradictory arguments regarding these references, let alone willful and fraudulent concealment of facts from the PTO as was the case in *Therasense*.

11.02(1)(d)(iv)(C) n. 169 (suggesting that the "unintentional" standard of patent application abandonment applies to patent expiration).  The unintentional standard "excludes, at a minimum, deliberate decisions not to prosecute [or, by analogy, to pay maintenance fees]."  4 DONALD S. CHISUM, CHISUM ON PATENTS § 11.03(2)(b)(vi)(A) (Matthew Bender 2010); *In re Application of Maldague*, Serial No. 725,592, 1988 Commr. Pat. LEXIS 22, at *3–4 (Comm'r Pat. & Trademarks June 10, 1988) ("[A] mistake in fact . . . may form the basis for a holding of unintentional abandonment . . . [but] . . . an application abandoned as a result of a deliberative, intentional course of action . . . does not amount to an unintentional abandonment . . . . Intentional abandonment precludes revival . . . .").  An inquiry into a party's good faith in claiming unintentional delay is an inequitable conduct inquiry.  *See, e.g.*, *Goss Int'l Ams., Inc. v. MAN Roland, Inc.*, No. 03-cv-513-SM, 2006 U.S. Dist. LEXIS 53245 (D.N.H. July 31, 2006) (finding no inequitable conduct in an unintentional abandonment of a patent application, despite facts that suggested deliberate intent to abandon).

### v. Reasonable inquiry into the facts and circumstances underlying the delayed payment of maintenance fees when seeking to reinstate a lapsed patent.

There is a dearth of authority with respect to an attorney's duty with respect to the inquiry that must be made into the underlying facts and circumstances surrounding a delayed maintenance fee payment.  However, the facts of the instant case indicate that, according to the PTO, the duty applicable in the instant case is a "reasonable inquiry into the facts and circumstances of such delay [in paying the maintenance fee]."  *See* Ex. 3, PTO's June 3, 2008, Corrected Decision on the Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent.

### C. There was No Inequitable Conduct because There Was No Intent to Deceive the PTO and Because No Material Information Was Withheld from the PTO.

### a. 55 Brake's failure to pay the required maintenance fee of the '587 patent was unintentional.

There is absolutely no question that 55 Brake's failure to pay the maintenance fees due and owing on the '587 patent was unintentional. The simple fact is that each and every one of the members (or former members) of 55 Brake testified that the failure to pay maintenance fees due and owing on the '587 was unintentional. Importantly, VGA can point to no testimony to refute this simple fact. Moreover, VGA can point to no document that establishes that 55 Brake intended to not pay the maintenance fees due on the '587 patent.

With respect to whether 55 Brake intended to not pay the maintenance fees due on the '587 patent, a bullet point summary of the testimony of 55 Brake's members (or former members) is as follows:

- David MacGregor, a managing member of 55 Brake testified as follows: "That's absolutely a fact. I had no intention of letting the '587 patent lapse. And I did not know that it had." *See* Ex. 4, MacGregor Depo. at 185; *see also id*. at 155-56, 223.

- Jeffrey Fletcher, a former managing member of 55 Brake (and its predecessor-in interest's President and CEO), testified that he had absolutely no intention of letting the '587 patent expire or go abandoned and that the opposite was true—55 Brake intended to keep its U.S. patents in force because they were its most valuable assets. *See* Ex. 5, Fletcher Depo. at 176. Mr. Fletcher further testified that no one at 55 Brake ever indicated that they wanted to let the '587 patent expire, go abandoned or not pay the maintenance fees. *Id*.; *see also id*. at 159.

- Joe M. Holmes, a former member of 55 Brake (and its predecessor-in interest's President and CEO) testified that he did not recall any conversation or meetings to discuss not paying maintenance fees and that the patents were the "life blood" of the company and he did not see giving them up. *See* Ex. 6, Holmes Depo. at 184. Mr. Holmes also testified that he could have accidentally "dropped the ball" with respect to the payment of the maintenance fee. *Id*. at 184.

Each of the current or former members of 55 Brake who were responsible at one time or another was charged with the responsibility of overseeing the payment of patent maintenance

fees or annuities on foreign patents, made it clear in no uncertain terms – 55 Brake's missed maintenance fee payment for the '587 patent was unintentional.

VGA will undoubtedly point to two categories of evidence in an attempt to establish that 55 Brake's delayed payment of the maintenance fee was intentional: (1) 55 Brake's poor financial condition; and (2) maintenance fee due date reminders from the law firm of Honnigman, Miller, Schwartz & Cohn (the "Honigman Firm") charged with maintaining the deadlines for maintenance fee and foreign annuity payments. *See, e.g.*, Ex. 2, Amended Answer at ¶¶ 60-61, 66-68, 72. However, these arguments are based wholly on speculation and conjecture and ignore the uncontroverted evidence.

For example, the testimony makes clear that 55 Brake's poor financial condition had nothing to do with whether the maintenance fees on the '587 patent would be paid. Mr. Holmes testified that the non-payment of the maintenance fee had nothing to do with 55 Brake's cash situation. *See* Ex. 6, Holmes Depo. at 187-188. Additionally, Mr. MacGregor testified that that even if 55 Brake's cash situation was poor that there was always a source of money to pay the maintenance fees (*i.e.*, either he or Jim Banducci would make the necessary cash contribution). *See* Ex. 4, MacGregor Depo. at 185-186. VGA's argument that 55 Brake intended to not pay the maintenance fees because it was cash poor is based purely upon conjecture and ignores the undisputed facts provided by the testimony of the current (and former) members of 55 Brake.

With respect to the notion that the maintenance fee reminders sent by the Honnigman Firm prior to the date the maintenance fees were due somehow evidences 55 Brake's intent to not pay the maintenance fees, VGA's argument would, once again, require one to merely speculate that such was the case, and, more importantly, ignores the undisputed facts. While the Honnigman Firm did send maintenance fee reminders to 55 Brake, there is absolutely no

correspondence to or from 55 Brake and the Honnigman Firm indicating that 55 Brake did not intend to pay the maintenance fees on the '587 patent.[2]

In addition to the written evidence that 55 Brake intended to pay the maintenance fees due on the '587 patent, the testimony makes clear that 55 Brake – a patent licensing company whose only revenue stems from the licensing of its patents – implied that it would be foolish to allow its most valuable assets, its United States patents, go abandoned.  *See* Ex. 5, Fletcher Depo. at 175-176.

At worst, 55 Brake can only be charged with an accident for letting the payment of the maintenance fees on the '587 "fall through the crack."  However, an inequitable conduct finding cannot arise from a party's gross negligence, let alone an accident. *See Astrazeneca Pharmaceuticals LP*, 2009 U.S. App. LEXIS at \*20-21 (citing *Kingsdown Med. Consultants,* 863 F.2d at 876 ("[e]vidence of mistake or negligence, even gross negligence, is not sufficient to support inequitable conduct in patent prosecution.").

> ### b. Attorney Epstein made a reasonable inquiry into the facts and circumstances underlying the delayed payment of the maintenance fee when seeking to reinstate the '587 patent.

Mr. MacGregor believes that the first time he learned that the '587 patent had lapsed due to the non-payment of maintenance fees was when he met with its litigation counsel, Goldstein, Faucett & Prebeg on or about August of 2007.  *See* Ex. 4, MacGregor Depo., 154-155.  When Mr. MacGregor learned of this fact, he was "shocked".  *See* Ex. 4, MacGregor Depo., at 154-155.  After learning that Mr. MacGregor had no knowledge that the '587 patent had lapsed (and

---

[2] VGA will likely point to the email of Joseph Coppola of the Honnigman Firm directed to Mr. MacGregor that purports to inform him that the '587 patent had lapsed and that efforts to reinstate the patent need to be instituted. *See* Ex. 6.1, Honnigman Firm Email to MacGregor, Depo. Ex.170.  However, Mr. MacGregor has no recollection of ever receiving the email and indicated that as of the date of the email he was heavily involved in his ranching business addressing issues that arise in the ranching business during the winter.  *See* Ex. 4, MacGregor Depo. at 217, 226.

that the non-payment of the maintenance fees was unintentional), Goldstein, Faucett & Prebeg immediately referred 55 Brake to Mr. Robert Epstein an attorney located in the Washington D.C. area to begin the efforts necessary to reinstate the '587 patent.

Mr. Epstein sought to obtain the facts and circumstances underlying the non-payment of the maintenance fees and inquired of Mr. Edward Goldstein of Goldstein, Faucett & Prebeg seeking information relating to the aspects related to the non-payment.  *See* Ex. 7, Epstein Depo. at 43.  As a result of Mr. Epstein's inquiry, Goldstein, Faucett & Prebeg sought an inquiry into the facts and circumstances surrounding the non-payment of the '587 patent's maintenance fees. *See* Ex. 8, Babbitt Depo. at 41.  The inquiry was conducted by Mr. Gary Babbitt, a member in 55 Brake.  *Id*. at 44.

While Mr. Epstein never met personally with or conducted interviews of the members of 55 Brake (or its prior counsel at the Honnigman Firm) to discuss the underlying facts related to the failure to pay the maintenance fee on the '587 patent, he did rely upon the inquiry conducted by Mr. Gary Babbitt, a member of 55 Brake, that was conducted at the request of 55 Brake's litigation counsel.  *See* Ex. 7, Epstein Depo. at 43, 59.

The inquiries made by Mr. Babbitt consisted of telephone interviews with 55 Brake's current and former members, Messrs. MacGregor, Fletcher and Holmes, as well as Mr. Jim Banducci (a former member of 55 Brake), related to the non-payment of the '587 patent's maintenance fees.  *See* Ex. 8, Babbitt Depo. at 43-46.  Each of these individuals uniformly indicated to Mr. Babbitt that the failure to pay the maintenance fee on the '587 patent was unintentional.  *See* Ex. 9, Babbitt Depo. Ex.102.  Mr. Babbitt recorded these conversations in an email and forwarded them to 55 Brake's litigation counsel, who in turn forwarded the email to Mr. Epstein.  *See* Ex. 9, Babbitt Depo. Ex 102.

Based upon the information obtained by Mr. Babbitt and communicated to Mr. Epstein, Mr. Epstein filed a Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent with the PTO ("the Petition") on August 14, 2007.  *See, e.g.,* Ex. 7, Epstein Depo. at 43, 58-59.  The Petition stated that ""[t]he delay in payment of the maintenance fee to this patent was unintentional".  *See* Ex. 10, Epstein Depo. Ex. 94 at Epstein 007.  The interviews conducted by Mr. Babbitt make clear – now and at the time Mr. Epstein obtained the information – that none of the members of 55 Brake intended to not pay the maintenance fees and let the '587 patent go abandoned.  *See* Ex. 9, Depo. Ex. 102, E-mail string including 55 Brake interviews.[3]

VGA alleges that "[h]ad 55 Brake disclosed either that the non-payment of the maintenance fee was intentional or that Mr. Epstein had not investigated the circumstances of the abandonment, the Patent Office would have denied the petition."  *See* Ex. 2, Amended Answer at ¶ 79.  There is no question based on the uncontested facts set forth herein that: (1) 55 Brake's non-payment of the '587 patent's maintenance fee was unintentional; and (2) that Mr. Epstein made, as required by the PTO, a "reasonable inquiry into the facts and circumstances" underlying the delayed payment of the maintenance fee such that Mr. Epstein's statement to the PTO that the "[t]he delay in payment of the maintenance fee to this patent was unintentional," was neither false nor uninvestigated.

55 Brake did not deceive the PTO, nor did it intend to deceive the PTO

### c. Attorney Pedersen did not breach her duty of candor and good faith in dealing with the PTO.

VGA's extensive inequitable conduct allegations also point to the conduct of 55 Brake's attorney that prosecuted the application leading to the '587 patent, Ms. Barbara S. Pedersen, as

---

[3] Mr. Babbitt's email summary of the interviews conducted with current and former members of 55 Brake is entirely consistent with their uncontroverted testimony in this case – the non-payment of the maintenance fees for the '587 patent was unintentional.

well as her husband, attorney Kenneth J. Pedersen.  *See* Ex. 2, Amended Answer at ¶¶ 60(ii), 86-87, 91, 94-97.   According to VGA's allegations, the inventors of the '587 patent or their attorneys committed inequitable conduct with respect to their alleged non-disclosures to the PTO with respect to two pieces of prior art, a United States Patent No. 4,838,617 (the "Deitchman patent") and a German Published Patent Application DE 43 42 543 (the "Semmler patent application").  *Id*. at ¶¶ 60(ii), 80-97.

### d.  The Dietchman patent.

The Dietchman patent was identified to the PTO on December 26, 2000, and referenced with other prior art references in the first Information Disclosure Statement ("IDS") submitted during the prosecution of the application leading to the '587 patent.  *See* Ex. 11, IDS, Depo. Ex. Ex. 134 (VWGOA 24939-24941).  In fact, the Dietchman patent is referenced on the face of the '587 patent.  *See* Ex. 1, the '587 patent.

As pointed out in VGA's Amended Answer, the Dietchman patent was disclosed to the PTO *before* it received an International Search Report ("ISR") from the European Patent Office with respect to the prosecution of a related foreign patent.  *See* Ex. 2, Amended Answer at ¶ 85. While the ISR was not included in a second Information Disclosure Statement ("Second IDS") submitted to the PTO on July 30, 2001, which cited the other prior art references disclosed in the ISR, inclusion of the Dietchman patent was unnecessary in view of the submission with the IDS. *See* Ex. 12, Second IDS., Depo. Ex. 134 (VWGOA 249888-24993).  Ms. Pedersen testified that once a reference is disclosed to the PTO in an IDS, it is not her "conventional approach to re-list a patent, because it was already disclosed.  *See* Ex. 13, B. Pedersen Depo. at 148-149.

The undisputed facts establish that the Deitchman patent was cited to the PTO. Accordingly, VGA's allegations of inequitable conduct with respect to the Dietchman patent must fail.

### e.  The Semmler patent application.

The Semmler patent application, which was published in the German language, was disclosed to the PTO on July 30, 2001, by Ms. Pedersen.  *See* Ex. 12, Second IDS, Depo. Ex. 134 (VWGOA 24988-24993).  The Second IDS stated that the references cited therein "were cited in an international search report mailed on April 27, 2001, from the PCT search authority in a related case."  *Id*. at 24989-990.  Like the Dietchman patent, the Semmler patent application is referenced on the face of the '587 patent.  *See* Ex. 1, the '587 patent.

VGA alleges that Ms. Pedersen failed to satisfy her obligations under the then applicable patent rules related to foreign language references (Section 1.98(a)(3) of the Patent Rules, as well as the then applicable section of the Manual of Patent Examining Procedure, Section 609).  Ex. 2, Amended Answer at ¶¶ 92-93.  In summary, VGA alleges that Ms. Pedersen failed to provide the PTO with a "concise explanation of relevance [of the reference] as it is presently understood" or a copy of an English language translation of the foreign language document if it is in the possession, custody or control of, or readily available to the applicant, his attorney or agent, or any other person who is substantively involved in the prosecution of the application.  The uncontested evidence contradicts VGA's allegations with respect to the Semmler Application.

Ms. Pedersen satisfied her duty of candor and good faith to the PTO by disclosing not only the Semmler patent application in the Second IDS, but also submitting a concise explanation to the PTO of the relevance of the Semmler patent application as it was then understood, wherein Ms. Pedersen notes that no translation is provided, "but comments

supplied". *See* Ex. 12, Second IDS at VWGOA 24991.  The comments provided to the PTO were an enclosed letter from Mr. Sven Evers, a consultant contracted by 55 Brake to engage in product design and the review of prior art, along with the Second IDS that summarized the contents of the Semmler patent application.  *See* Ex. 12, Second IDS at VWGOA 24992-993. Moreover, despite VGA's allegations, the uncontroverted testimony from Mr. Evers establishes that there never was a written translation of the Semmler patent application prepared.  *See* Ex. 14, Evers Depo. at 42, 49, 76-77.

Ms. Pedersen discharged her duty to the PTO and disclosed the Semmler patent application and provided the everNet letter to the PTO, setting forth a concise explanation of relevance of the Semmler patent application as it then understood.  Moreover, Ms. Pedersen could certainly be under no obligation to disclose to the PTO a translation of the Semmler patent application that did not exist.

## V.  CONCLUSION

VGA has identified no direct evidence whatsoever – much less clear and convincing evidence – of any intent by 55 Brake to deceive the United States Patent and Trademark Office during the prosecution of the '587 patent.  All material prior art was submitted to the PTO in accordance with the applicable patent rules, either during the initial prosecution, along with the delayed payment of the maintenance fee, or with the subsequent reinstatement of the '587 patent. Contrary to VGA's arguments, the only evidence adduced to date is that 55 Brake had no intent to deceive the PTO in these regards.  Because VGA can come forward with no direct evidence to sustain its high burden of proving inequitable conduct by clear and convincing evidence, 55 Brake respectfully requests that the Court grant its motion and a enter judgment dismissing VGA's inequitable conduct defense and counterclaim.

DATED:   September 13, 2010

Respectfully submitted,

_____/s/ Matthew J.M. Prebeg_____

Matthew J.M. Prebeg (Texas Bar No. 00791465)
Edward W. Goldstein (Texas Bar No. 08099500)
Stephen W. Abbott (Texas Bar No. 00795933)
Wendy L. Boone (Texas Bar No. 24047310)
GOLDSTEIN, FAUCETT & PREBEG L.L.P.
1177 West Loop South, Suite 400
Houston, Texas  77027
Telephone:  (713) 877-1515
Facsimile:   (713) 877-1737


Andrew J. Kochanowski (P55117)
Lisa R. Mikalonis (P39485)
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, Michigan 48075
Telephone: (248) 355-0300
Facsimile: (248) 936-2153
E-mail:  akochanowski@sommerspc.com
              lmikalonis@sommerspc.com
Local Counsel:


Frank J. Dykas (ISB #1777)
Elizabeth Herbst Schierman (ISB #7208)
DYKAS, SHAVER & NIPPER, LLP
P.O. Box 877
Boise, Idaho  83701-0877
Telephone:  (208) 345-1122
Facsimile:   (888) 388-6035

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

  I HEREBY CERTIFY that on the 13th day of September 2010, I filed the **MEMORANDUM OF LAW IN SUPPORT OF 55 BRAKE, L.L.C.'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mark Hannemann
mhannemann@kenyon.com
***Volkswagen Group of America, Inc.***

Philip J. McCabe
pmccabe@kenyon.com
***Volkswagen Group of America, Inc.***

Michael J. Lennon
mlennon@kenyon.com
***Volkswagen Group of America, Inc.***

Susan Smith
ssmith@kenyon.com
***Volkswagen Group of America, Inc.***

Georg C. Reitboeck
greitboeck@kenyon.com
***Volkswagen Group of America, Inc.***

Stephen R. Thomas
srt@moffatt.com
***Volkswagen Group of America, Inc.***

Tyler J. Anderson
tya@moffatt.com
***Volkswagen Group of America, Inc.***

/s/ Matthew M.J. Prebeg
  Matthew M.J. Prebeg