Frank J. Dykas (ISB #1777)
*Email:  frank@dykaslaw.com*
Elizabeth H. Schierman (ISB #7208)
*Email:  schierman@dykaslaw.com*
DYKAS, SHAVER & NIPPER, LLP
P.O. Box 877
Boise, Idaho  83701-0877
Telephone:  (208) 345-1122
Facsimile:   (888) 388-6035

Edward W. Goldstein (Texas Bar No. 08099500)
*Email:  egoldstein@gfpiplaw.com*
Matthew Prebeg (Texas Bar No. 00791465)
*Email:  mprebeg@gfpiplaw.com*
Stephen W. Abbott (Texas Bar No. 00795933)
*Email:  sabbott@gfpiplaw.com*
Wendy L. Boone (Texas Bar No. 24047310)
*Email:  wboone@gfpiplaw.com*
GOLDSTEIN, FAUCETT & PREBEG L.L.P.
1177 West Loop South, Suite 400
Houston, Texas 77027
Telephone:  (713) 877-1515
Facsimile:   (713) 877-1737

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| 55 BRAKE, L.L.C., <br><br>  Plaintiff, <br><br> v. <br><br> AUDI OF AMERICA, INC., *et al.*, <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) **55 BRAKE, L.L.C.'S BRIEF IN REPLY TO DEFENDANT'S OPPOSITION TO 55 BRAKE'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT** <br><br> Case No. CV 1:08-cv-00177-BLW |

I.    SUMMARY OF ARGUMENT

Plaintiff 55 Brake, L.L.C. ("55 Brake") submits this reply to defendant Volkswagen Group of America, Inc.'s ("VGA's") Opposition to 55 Brake's Motion for Summary Judgment of No Inequitable Conduct.[1]

As pointed out in 55 Brakes motion, VGA has identified no evidence – much less clear and convincing evidence – of any intent by 55 Brake to deceive the United States Patent and Trademark Office ("PTO"). It is clear from VGA's opposition brief that it is unable to come forward with any direct evidence to support its counterclaim and affirmative defense alleging the unenforceability of United States Patent No. 6,450,587 ("the '587 patent") based upon inequitable conduct. Instead, VGA argues its position armed only with conjecture and suspicion to support wide ranging conspiracy theories based solely upon unreasonable inferences drawn from circumstantial evidence. Much of the circumstantial evidence upon which VGA relies is not only wholly inconclusive as to the theories posited, but, ironically, provides additional evidence to support 55 Brake's argument that it had no intent to deceive the PTO.

Even if VGA's pleadings could be taken as true, because there are no questions of material fact and VGA has come forward with no evidence to sustain its burden of proving inequitable conduct by clear and convincing evidence, 55 Brake respectfully requests that the Court grant its motion for summary judgment (and deny VGA's motion asserted under Rule 56(f)) and enter judgment dismissing VGA's counterclaim and defense of unenforceability for inequitable conduct.

I.    **DIRECT EVIDENCE ESTABLISHES THAT THE NON-PAYMENT OF THE MAINTENANCE FEES FOR THE '587 PATENT WAS UNINTENTIONAL.**

---

[1] To the extent FED. R. CIV. P. 56(f), effective December 1, 2010, is applicable to the issue *sub judice*, 55 Brake opposes VGA's request for summary judgment and, for further response, specifically incorporates by reference those facts, arguments and authorities set forth in its Motion for Summary Judgment of No Inequitable Conduct.

55 BRAKE, L.L.C.'S BRIEF IN REPLY- 1

VGA's opposition conveniently ignores the direct, sworn testimony of the members (or former members) of 55 Brake who were responsible at one time or another for the payment of maintenance fees for its patents, including the '587 patent. The uncontroverted testimony from these witnesses is that the failure to pay the maintenance fees due and owing on the '587 was unintentional. *See* 55 Brake's Motion (Doc. No. 163) at 13-14 (and exhibits cited therein). As pointed out in 55 Brake's Motion (and confirmed by VGA's opposition), VGA can cite no testimony or even a single document to refute this simple fact.

VGA argues that 55 Brake made the conscious decision to abandon two applications due to its poor financial condition. *See* VGA's Opp. (Doc. No. 168) at 9; *see also* VGA's Opp. at Ex. 31 (Doc. No. 168-37), Ex. 38 (Doc. No. 168-44), and 39 (Doc. No. 168-45). However, 55 Brake's predecessor in interest (55 Brake Company), ***only after convening a meeting of its board of directors***, made the conscious decision – a business decision – to let two patent applications go abandoned only after meeting and addressing this proposed course of action. *See* VGA's Opp. at Ex. 31 (Doc. No. 168-37); *see also* 55 Brake's Motion at Ex. 6 (Doc. No. 161-6), Holmes Depo., at 170:5-171:7 (55 Brake Company's board of directors decided to intentionally let the two patent applications to abandon).[2]

VGA's argument also relies in large part on the notices that the Honnigman Firm provided to 55 Brake prior to the expiration of the '587 patent. However, not a single

---

[2] It is clear that 55 Brake undertook affirmative, deliberate action and made the decision made to abandon those two separate pending patent applications. Such is not the case with respect to the expiration of the '587 patent and there is absolutely no evidence to suggest otherwise. There was no meeting held to discuss the expiration and subsequent abandonment of the '587 patent, let alone a conscious decision made by the members of 55 Brake to let the '587 expire. *See* 55 Brake's Motion (Doc. No. 163) at 13; *Id*. at Ex. 5 (Doc. No. 161-5), Fletcher Depo., 176:19-25 (No one at 55 Brake ever indicated that they wanted to let the '587 patent expire or go abandon[ed] and that they did not want to pay the maintenance fee on the '587 patent). Clearly, there was no deliberate decision by 55 Brake to let the '587 patent expire. *See, e.g., Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1331 (Fed. Cir. 2009) (VGA "must show that [55 Brake] made a deliberate decision to withhold a known material reference.").

communication exchanged between the Honnigman Firm and 55 Brake prior to the expiration of the '587 patent indicates that 55 Brake was even considering letting the '587 patent expire, let alone that it had made a decision to let it expire. To suggest otherwise, as VGA would have the Court believe, strains credulity and is not a reasonable inference from this pool of circumstantial evidence.[3]

The Honnigman Firm's communications with 55 Brake prior to the expiration of the '587 patent, when taken as a whole, make clear that 55 Brake fully intended to pay the maintenance fees on the '587 patent. For example, in Ms. Rhodes's email to Mr. Holmes dated October 25, 2005, Ms. Rhodes confirmed and indicated that it was the "[Honnigman Firm's] understanding that [55 Brake] would be responsible for paying the maintenance fee annuity for the related U.S. and Canadian Patents." *See* VGA's Opp. at Ex. 43 (Doc. No. 168-49). VGA fails to identify for the Court the salient correspondence exchanged between the Honnigman Firm and 55 Brake on this issue. On January 14, 2006, just two months prior to the due date to pay the maintenance fees on the '587 patent without a surcharge, Mr. Holmes replied to email sent by Ms. Joyce Krump at the Honnigman Firm a week earlier indicating that the '587 patent had an "outstanding maintenance fee due with the PTO" and that she understood that Mr. Holmes was handling this matter. *See* VGA's Opp. at Ex. 45 (Doc. No. 168-51). In his reply email, there is a clear indication that 55 Brake had no intention of letting the '587 patent expire: "Normally we wait until we are closer to the date the window closes to pay maintenance fees. ***I expect we will pay [the maintenance fee due on the '587 patent] by August 2006***." *See* VGA's Opp. at Ex. 45 (Doc. No. 168-51) (emphasis added). This evidence clearly cuts against VGA's argument that 55 Brake intended to let the '587 patent expire.

---

[3] *See, e.g., Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) ("the inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.").

## II. POST-EXPIRATION OF THE '587 PATENT AND THE PETITION TO REINSTATE THE '587 PATENT.

### A. Events Following the Expiration of the '587 Patent.

VGA also draws unreasonable inferences from the circumstantial evidence, while completely ignoring direct evidence, with respect to the events leading up to the reinstatement of the '587 patent. VGA incorrectly posits that Mr. MacGregor had a reason to not disclose the November 2006 communications with Mr. Coppola of the Honnigman firm. *See* VGA's Opp. (Doc. No. 168) at 14. VGA asserts that Mr. MacGregor acted on information and sought to reinstate the '587 patent after he stood to financially benefit from its enforcement and that the only possible conclusion is that he intended to deceive the PTO. *Id*. at 15). VGA's conclusions are incorrect and not based upon reasonable inferences from the facts.

Mr. MacGregor did not realize until the time he met with the lawyers of Goldstein, Faucett & Prebeg, L.L.P. ("GFP") in the July to August 2007 timeframe that the '587 patent had expired. *See* 55 Brake's Motion (Doc. No. 163) at 15. While VGA puts great weight on Mr. Coppola's email and purported telephone conversation with Mr. MacGregor, Mr. MacGregor does not recall the telephone conversation with Mr. Coppola in November of 2006[4], nor does he recall ever seeing his email. *See* 55 Brake's Motion at Ex. 4 (Doc. No. 168-4), MacGregor Depo., at 221:15-21. That is Mr. MacGregor's belief, and that is his testimony.

Whether VGA chooses to believe Mr. MacGregor or not, his heavy involvement in the ranching business at that time (as well as his possible misunderstanding) is a plausible, good faith explanation for why this information was not cited to the PTO or his attorneys as it related to the period of delay in paying maintenance fees on the '587 patent. *See* 55 Brake's Motion (Doc. No. 163) at n.2. Even VGA recognizes that that the law precludes a finding of inequitable

---

[4] Nor does Mr. Coppola recall the telephone conversation. *See* VGA's Opp. at Ex. 41 (Doc. No. 168-47), Coppola Depo., 72.

55 BRAKE, L.L.C.'S BRIEF IN REPLY- 4

conduct when there is a plausible, good faith explanation for why information was not cited to the PTO. *See* VGA's Opp. (Doc. No. 168) at 14 citing *Leviton Mfg. Co. v. Univ. Sec. Instruments, Inc.*, 606 F.3d 1353, 1362-63 (Fed. Cir. 2010).

The facts of this case would suggest that Mr. MacGregor could only be charged with an accident, with the worst case scenario rising to the level of gross negligence (though 55 Brake does not believe Mr. MacGregor was grossly negligent) with respect to the expiration and reinstatement of the '587 patent. However, an inequitable conduct finding cannot arise from what would be tantamount to gross negligence, let alone an unintentional accident, which occurred in the instant case. *See Astrazeneca Pharm., LP v. Teva Pharm. USA, Inc.*, 2009 U.S. App. LEXIS at *20-21 (citing *Kingsdown Med. Consultants v. Hollister, Inc.,* 863 F.2d 867, 876 (Fed. Cir. 1988) ("[e]vidence of mistake or negligence, even gross negligence, is not sufficient to support inequitable conduct in patent prosecution.").

### B. The Petition to Reinstate the '587 Patent.

In its opposition, VGA erroneously suggests that Mr. Epstein was required to respond to the "reminder" by the PTO. *See* VGA's Opp. (Doc. No. 168) at 3. Moreover, VGA characterizes the PTO's statement as a "warning" and that Mr. Epstein was obligated to conduct an "investigation" and that the PTO assumed he had conducted an investigation. *See* VGA's Opp. (Doc. No. 168) at 11. These arguments and allegations have no basis in law or fact. According to the PTO's own language and procedures, Mr. Epstein was only required to conduct a "reasonable inquiry", which he did.

The information Mr. Epstein obtained as a result of Mr. Gary Babbitt's interviews – all of which indicated that there was no intent to let the '587 patent expire – established the basis for the petition for restatement, and has been repeatedly stated and corroborated by the sworn

testimony of the members of 55 Brake.  VGA's opposition completely ignores this, the most direct evidence possible as to this issue.

VGA argues that Mr. Epstein did not know the methods used by Mr. Babbitt when interviewing the members of 55 Brake, the corroborating documents supporting their representations to Mr. Babbitt, or how clear the memories of interviewees were.  *See* VGA's Opp. (Doc. No. 168) at 16.  55 Brake is aware of no authority to suggest that Mr. Epstein would have to serve as an investigator (beyond those representations of the members of 55 Brake provided to him in an email) and also as the trier-of-fact to weigh evidence, interview witnesses and pass upon the credibility of those witnesses.[5]  55 Brake is also unaware of any authority that would require Epstein to go beyond what actually occurred in this case.  All that is required for the petition for reinstatement is a statement that the non-payment was unintentional, and that is precisely the information on which Mr. Epstein based the petition for reinstatement, and the reason the PTO granted the petition.[6]

---

[5] It should be noted that in 1992, Congress, "concerned that the 'unavoidable' delay standard was too stringent" for the reinstatement of patents expired for the nonpayment of maintenance fees, amended 35 U.S.C. § 41(c) to allow patent owners whose patents and expired for nonpayment of maintenance fees to have their patens reinstated upon a showing that the nonpayment of the fee was ***either unintentional or unavoidable***.  *See, e.g., Centigram Comm. Corp. v. Lehman*, 862 F.Supp. 113, 115 (E.D. Va. 1994) (emphasis added); *see also Ray v. Lehman*, 55 F.3d 606, n.1 (Fed. Cir. 1995) ("Section 41(c) has since been amended to allow patentees to reinstate expired patents under a lower unintentional standard.").  Prevailing case law provides that reinstatement under 35 U.S.C. § 41 for an unavoidable delay requires a determination as to whether "the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person."  *Burandt v. Dudas*, 528 F.3d 1329, 1333 (Fed. Cir. 2008) (internal citation omitted).  Further, to meet the unavoidable delay standard, a patentee must demonstrate that "reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition [to accept an unavoidably delayed payment] was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent."  *Id*.  Moreover, "[t]he showing must enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly."  *Id.*  Had reinstatement of the '587 patent been sought under the unavoidable delay standard, Mr. Epstein would have been required to adhere to these much more stringent PTO requirements.  Because the petition was for an unintentional delay, Mr. Epstein was not required to do so.

[6] VGA also makes the unfounded suggestion that Mr. Epstein filed the petition for reinstatement because 55 Brake's previous attorneys refused to file the petition because they believed that the non-payment was intentional.  *See* VGA's Opp. (Doc. No. 168) at 16.  There is no evidence – even from the deposition testimony of 55 Brake's former attorneys – to support this suggestion.

55 BRAKE, L.L.C.'S BRIEF IN REPLY- 6

Despite VGA's baseless attacks upon 55 Brake's counsel, Mr. Robert Epstein, the facts indicate that Mr. Epstein discharged his duty to the PTO.

### III. 55 BRAKE'S PATENT AGENT DISCHARGED HER DUTIES DURING THE PROSECUTION OF THE APPLICATION LEADING TO THE '587 PATENT AND DID NOT INTEND TO DECEIVE THE PTO.

Ms. Barbara S. Pedersen, 55 Brake's patent agent who prosecuted the application leading to the '587 patent, also discharged her duty to the PTO, both with respect to the two pieces of prior art raised by VGA in its unenforceability counterclaim and affirmative defense, U.S. Patent No. 4,838,617 (the "Deitchman patent") and a German Published Patent Application DE 43 42 543 (the "Semmler patent application"), as well as the materials related to a co-pending related foreign application she received from the European Patent Office ("EPO") acting under the Patent Cooperation Treaty ("PCT"). Moreover, even assuming these references and information were material, Ms. Pedersen had no intent to deceive the PTO.

To establish her intent under the clear and convincing evidence standard, VGA "must show that the applicant made a deliberate decision to withhold a known material reference." *Exergen Corp.*, 575 F.3d at 1331. This did not occur. Both the Deitchman patent and the Semmler application (with comments providing a "concise explanation of relevance [of the reference] as it is presently understood" by the applicants, *i.e.*, Noble Hamilton and David MacGregor) were disclosed to the PTO. Disclosing the references cited by the foreign examiner to the PTO is of paramount concern to any practitioner, including Ms Pedersen.[7]

---

[7] Despite VGA's arguments, prevailing authorities provide that while "international search reports may contain information material to patentability if they contain closer prior art than that which was before the United States examiner, *it is the reference itself, not the information generated in prosecuting foreign counterparts, that is material to prosecution in the United States.*" *Church & Dwight Co. v. Abbott Labs.*, 2008 U.S. Dist. LEXIS 49590, *14-15 (D.N.J. June 23, 2008) (emphasis added). This logic has extended to decisions made by the foreign examining authority. *Id.*; *see also ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998) ("The details of foreign prosecution are not an additional category of material information.") (internal citations omitted).

55 BRAKE, L.L.C.'S BRIEF IN REPLY- 7

While VGA argues that the International Search Report ("ISR") and the opinion received from the EPO should have been disclosed to the PTO, neither the Manual of Patent Examining Procedure ("MPEP") nor the Code of Federal Regulations ("CFR") *mandate* that this information be provided to the PTO as part of an IDS.  In fact, VGA's opposition points out that the disclosure of this information is *recommended*.  See VGA's Opp. (Doc. No. 168) at 7.  This is entirely consistent with Ms. Pedersen's deposition testimony.  While she does not recall the events occurring approximately nine years prior to her depositions, she indicated that she did not remember the details and did not know why the ISR or the opinion received from the EPO were not disclosed to the PTO.  See VGA's Opp. at Ex. 2 (Doc. No. 168-4), B. Pedersen Depo., 130:14-20, 162:6-9; 164:15-20; *see also* 55 Brake's Motion at Ex. 13 (Doc. No. 161-14), B. Pedersen Depo., 150:2-5. 150:14-19.  However, Ms. Pedersen made clear that in her customary practice she would make sure the prior art references identified by foreign examiners are disclosed to the PTO and are made of record and that she did not always send in the [ISR] or the opinions received from foreign examiners.  See 55 Brake's Motion at Ex. 13 (Doc. No. 161-14), B. Pedersen Depo., 150:2-5, 150:14-19; *see also* VGA's Opp. at Ex. 2 (Doc. No. 168-4), B. Pedersen Depo., 162: 6-9; 164:15-20.

There is no evidence to support VGA's contention that Ms. Pedersen intended to deceive the PTO.  Instead, her testimony is that she acted in accordance with her customary practice and cited these references to the PTO, as well as a summary of the Semmler patent application setting forth a concise explanation of relevance of the Semmler patent application as it was then understood.

### A.  The Semmler Patent Application

With respect to the Semmler patent application, Ms. Pedersen satisfied her obligations under the then applicable Patent Rules, particularly 37 C.F.R. § 1.98(a), which provides that an information disclosure statement shall include, among other things,

> (3)(i) A concise explanation of the relevance, as it is presently understood by the individual designated in § 1.56(c) most knowledgeable about the content of the information, of each patent, publication, or other information listed that is not in the English language. The concise explanation may be either separate from an applicant's specification or incorporated therein.
>
> (ii) A copy of the translation if a written English-language translation of a non-English language document is within the ***possession, custody, or control of, or is readily available to any individual designated in § 1.56(c)***.[8]

Ms. Pedersen plainly satisfied her obligation under § 1.98(a)(3) by supplying the information contained in the second information disclosure, including the Semmler patent application and the letter from Sven Evers – addressed to the applicants, Noble Hamilton and David MacGregor – explaining the relevance of the Semmler patent application. *See* 55 Brake's Motion (Doc. No. 163) at 19-20; *see also* 55 Brake Motion at Ex. 12 (Doc. No. 161-13) at VWGOA 24991.  She was not required to submit a translation of Semmler to the PTO, because there was no translation to submit.  55 Brake's Motion (Doc. No. 163) at 20; *see also* 55 Brake's Motion at Ex. 14 (Doc. No. 161-15), Evers Depo., 42, 49, 76-77.  By virtue of her disclosures made in the second IDS, Ms. Pedersen was not required to submit the ISR or the opinion from the PCT to satisfy the "concise explanation of relevance" required by § 1.98(a)(3).[9]

In addition to the fact that Ms. Pedersen discharged her duties to the PTO, her sworn testimony makes clear that she had no intent to deceive the PTO with respect to the Semmler patent application.  *See* VGA's Opp. at Ex. 2 (Doc. No. 168-4), B. Pedersen Depo., 98:20-99:1

---

[8] *See* Ex. 1, 37 C.F.R. 1.98 (Aug. 2001) (Depo. Ex. 178).
[9] *See* Ex. 2, MPEP § 609 at 600-98, 100-101 (Feb. 2000) (Depo. Ex. 179) which describes the minimum requirements for an information disclosure statement.  The MPEP further provides that the "concise explanation of relevance" requirement of § 1.98(a)(3) can be satisfied by submitting an "English-language version of the search report or action which indicates the degree of relevance found by the foreign office." *Id*. at 600-101.

55 BRAKE, L.L.C.'S BRIEF IN REPLY- 9

("I did my absolute best to [fulfill the requirements of § 1.98(a)(3)]"). Moreover, with respect to the Semmler patent application, Ms. Pedersen testified that she "disclosed what [she] had, and what [she] understood the client had," and that she "did that in good faith." *See* Ex. 3, B. Pedersen Depo., at 97:4-8; *see also Id*. at 93:11-15, 95:4-11; 157:2-3.

There is no evidence to support VGA's contention that Ms. Pedersen failed to discharge her duties to the PTO or that she intended to deceive the PTO with respect to the Semmler patent application.

### B.  The Deitchman Patent

There is no evidence to support VGA's contention that Ms. Pedersen intended to deceive the PTO with respect to the Dietchman patent. The Dietchman patent, an English-language patent, was cited to the examiner and made part of the record as part of the first IDS submitted during the prosecution of the application leading up to the '587 patent. Like the Semmler patent application, by virtue of the examiners initials next to these references, it is clear that the examiner was aware of and considered the Deitchman patent during prosecution. *See* 55 Brake's Motion (Doc. No. 163) at 19-20; *Id*. at Ex. 11 (Doc. No. 161-12) at VWGOA 24940; *Id*. at Ex. 12 (Doc. No. 161-13) at VWGOA 24991. Moreover, Ms. Pedersen had no intent to deceive the PTO with respect to the Deitchman patent.[10]

### II.    CONCLUSION

Because VGA can come forward with no direct evidence to sustain its high burden of proving inequitable conduct by clear and convincing evidence, 55 Brake respectfully requests that the Court grant its motion and a enter judgment dismissing VGA's inequitable conduct defense and counterclaim.

---

[10] *See* 55 Brake's Motion at Ex. 13 (Doc. No. 161-14), B. Pedersen Depo., 150:2-5, 150:14-19; VGA's Opp. at Ex. 2 (Doc. No. 168-4), B. Pedersen Depo., 162: 6-9; 164:15-20; *see also See* Ex. 3, B. Pedersen Depo., at 97:4-8; *Id*. at 93:11-15, 95:4-11; 157:2-3.

DATED:   December 3, 2010

                                        Respectfully submitted,

                                        /s/ Matthew J.M. Prebeg

Matthew J.M. Prebeg (Texas Bar No. 00791465)
Edward W. Goldstein (Texas Bar No. 08099500)
Stephen W. Abbott (Texas Bar No. 00795933)
Wendy L. Boone (Texas Bar No. 24047310)
GOLDSTEIN, FAUCETT & PREBEG L.L.P.
1177 West Loop South, Suite 400
Houston, Texas  77027
Telephone:  (713) 877-1515
Facsimile:  (713) 877-1737

Andrew J. Kochanowski (P55117)
Lisa R. Mikalonis (P39485)
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, Michigan 48075
Telephone: (248) 355-0300
Facsimile: (248) 936-2153
E-mail:  akochanowski@sommerspc.com
        lmikalonis@sommerspc.com
Local Counsel:

Frank J. Dykas (ISB #1777)
Elizabeth Herbst Schierman (ISB #7208)
DYKAS, SHAVER & NIPPER, LLP
P.O. Box 877
Boise, Idaho  83701-0877
Telephone:  (208) 345-1122
Facsimile:  (888) 388-6035

**ATTORNEYS FOR PLAINTIFF**

N
N
N

# CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 3rd day of December 2010, I filed the **BRIEF IN REPLY TO DEFENDANT'S OPPOSITION TO 55 BRAKE'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Mark Hannemann<br>mhannemann@kenyon.com<br>***Volkswagen Group of America, Inc.*** | Philip J. McCabe<br>pmccabe@kenyon.com<br>***Volkswagen Group of America, Inc.*** |
| Michael J. Lennon<br>mlennon@kenyon.com<br>***Volkswagen Group of America, Inc.*** | Susan Smith<br>ssmith@kenyon.com<br>***Volkswagen Group of America, Inc.*** |
| Georg C. Reitboeck<br>greitboeck@kenyon.com<br>***Volkswagen Group of America, Inc.*** | Stephen R. Thomas<br>srt@moffatt.com<br>***Volkswagen Group of America, Inc.*** |
| | Tyler J. Anderson<br>tya@moffatt.com<br>***Volkswagen Group of America, Inc.*** |

              /s/ Matthew M.J. Prebeg
                Matthew M.J. Prebeg